IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN KIRKISH,                     }
                                  }
        Plaintiff,                }
                                  }      CIVIL ACTION NO.
v.                                }      07-AR-0062-S
                                  }
MARKETRON INTERNATIONAL, INC.,    }
                                  }
        Defendant.                }


**MEMORANDUM OPINION**

Plaintiff John Kirkish ("Kirkish") has invoked this court's federal question jurisdiction, alleging that defendant Marketron[1] International, Inc. ("Marketron") terminated him and in doing so, discriminated against him because of his age and race, constituting a violation of the Age Discrimination in Employment Act ("ADEA") and 42 U.S.C. § 1981.  The court has before it Marketron's motion for summary judgment on both claims.  Marketron has also moved to strike portions of Kirkish's affidavit and portions of Scott Cagle's ("Cagle") declaration.  For the reasons that follow, the court will grant Marketron's motion for summary judgment on both counts.  The motion to strike portions of Cagle's declaration will be granted, and the motion to strike portions of Kirkish's affidavit will be granted in part and mooted in part.

---

[1] The style of defendant's pleadings refers to defendant as "Marketon International, Inc."  However, in the body of defendant's pleadings, in plaintiff's pleadings, and on this court's electronic filing system, defendant is referred to as "Marketron International, Inc."  Assuming that the spelling of defendant's name in the style of its pleadings is simply a typographical error, the court will refer to defendant as "Marketron International, Inc." or simply "Marketron."

**FACTS**[2]

Marketron develops and provides broadcast management systems for members of the broadcast industry.  On August 4, 2003, Marketron offered Kirkish a position as a program developer.  The hiring decision was jointly made by Michael Hunter ("Hunter"), Marketron's General Manager, Sid Knight ("Knight"), Marketron's Vice-President of Operations and Development, and Michael Schley ("Schley"), Marketron's lead developer for the project on which Kirkish was hired to work.  Kirkish is a Caucasian over 40 years of age.  According to the letter documenting Kirkish's job offer, in his position, he was to report to Knight.  Kirkish began working for Marketron on September 4, 2003.

As a program developer, Kirkish worked as a member of a cross-functional team ("CFT"), a group composed of employees from various Marketron departments, such as product sales, product development, and quality assurance, assigned to produce a specific product for Marketron's clients.  The members of the CFT are to work together to produce the best product to suit the needs of the client.  A project development coordinator ("PDC") is responsible for conveying the client's specifications and needs to the CFT and for coordinating the CFT's efforts to ensure compliance with the customer's requests.  Program developers like Kirkish were

---

[2]    In accordance with Fed. R. Civ. P. 56(c), the narrative statement of facts include facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to Kirkish, the non-moving party.

responsible for writing the source code that produces the programs the clients request and that fits in with Marketron's other products.

On January 8, 2004, Kirkish received his first performance review from Marketron.  Schley and Knight were responsible for ranking Kirkish.  Kirkish was ranked as a "low performer" in the areas of job knowledge and communications.  However, Schley stated that overall, Kirkish had a very good review and that his lack of job knowledge was due to his minimal time on the job at the time of this evaluation.

In contrast, Tammy Halcomb ("Halcomb"), Marketron's director of development, attests that, starting in 2004, she began to receive complaints about Kirkish.  One person who complained was John Davis ("Davis"), a lead developer on another project Kirkish worked on at Marketron.  In his affidavit, Davis stated that he complained to Halcomb, as well as to Knight and to Hunter, that Kirkish was difficult to work with and failed to follow instructions.

On June 15, 2004, Kirkish was ranked in his mid-year evaluation by Knight, Marketron's vice president for product development, and by Marketron's engineering managers and leads.  In this evaluation, Kirkish received a performance group rank of "3" out of a scale of 1-4, with "1" being the highest rank.  While Kirkish was labeled as having strengths because he had a positive attitude, produced quality and innovative work, and showed

initiative, he also had problems.  As an "area to focus on to ensure/improve success," Kirkish was instructed to work with his CFT and within procedures.   He was also instructed not unilaterally to write new code and to seek review and agreement from his team before acting.  This concern is related to a problem that Kirkish had with his lead developer, Davis.  Davis states in his affidavit that he instructed Kirkish to complete a project using the code that Davis had previously written so as to fit in with Marketron's product line.  Davis states that while Kirkish repeatedly told him that he was following these instructions, he in fact did not.  Davis later discovered that Kirkish had written his own code in blatant disregard of his instructions.  Davis relayed this information to Knight, who sent Kirkish an email with these instructions on August 11, 2004, noting that Kirkish's work should be done according to the specifications of Davis and Sean Rafferty ("Rafferty"), the PDC on the project, and that because it was a top priority, it needed to be completed in two days.  On February 11, 2005, six months after Knight sent Kirkish this email, Davis sent Kirkish an email regarding this project and attaching his code, stating "This is what you need to use!!!!!!!  I do not want to talk about this again."  Davis attests that Kirkish defied these orders and never made the changes according to his instructions.

On January 12, 2005, Knight completed Kirkish's 2004 performance review.  On a scale of 1-3 with "3" being the highest possible score, Kirkish received a "2" (meets and occasionally

exceeds expectations) in five of ten categories and a "1" (needs improvement) in the other five categories.  Knight determined that Kirkish needed improvement in the areas of productivity, project management, communications, teamwork/cooperation, and judgment. Knight remarked that Kirkish was meeting goals in learning more about the industry and Marketron's products but noted that he needed to continue to expand the breadth of his knowledge base. Kirkish's review reflects that "when ranked against his peers, John [Kirkish] ranked in the bottom group."  The comments remark that while Kirkish had made several accomplishments and was a skilled developer, he needed to continue to work within Marketron's procedures.  His failure to follow Davis's directions affected productivity.

On July 12, 2005, Kirkish received his 2005 mid-year performance feedback, completed by managers Knight and Halcomb. The evaluation notes that Kirkish was technically skilled and completed non-defective code.  However, the evaluation states that Kirkish was critical of those requiring changes in his code or project and spent too much time focusing on who was at fault.  It also offers Kirkish suggestions for improvement, admonishing him to listen to the ideas and suggestions of others and to work within the code and directions given to him by his lead developers.  It notes that Kirkish needed to work more within his CFT rather than going outside of it to seek opinions.  It also recommends that

Kirkish work more with his PDC and others on the team.  Kirkish responded to this feedback by countering each of the suggestions in writing.  He disputes much of the observations made in the feedback and argues with the goals and areas to focus on that Knight and Holcomb identified for him.  Halcomb notes that Kirkish did not offer to improve his performance or follow their directives listed in the evaluation.  It is fair to say that Kirkish, in most instances, took the position that he knew what was best.

In September 2005, Kirkish and Davis, along with other employees in the Birmingham office, were a part of a nationwide group of Marketron employees working on a project.  After the project was completed, an employee from another office sent out a memo congratulating some Marketron employees who contributed to the project.  Claiming that he and Davis actually did all of the work on the project and noting that they should receive this credit, Kirkish altered his copy of the memo to reflect only his and Davis's names and gave the memo to Davis.  Another employee obtained the memo and distributed it around the office.  Halcomb and Hunter also received copies.  Halcomb was upset by the memo and was concerned that it would anger other employees because it did not credit their work.  Hunter was also upset about the memo because he feared that other employees would be angry because they did not receive credit for their work on the project.

On November 16, 2005, Halcomb and Knight ranked the Birmingham program developers.  Both gave Kirkish the lowest scores out of the five developers.  On November 28, 2005, Halcomb completed Kirkish's 2005 performance review.  This review was only partially completed. Kirkish was rated as "meets and occasionally exceeds expectations" (a 2 out of 3, with 3 being the highest possible score) in six of ten areas, including job knowledge, productivity, quality, project management, innovation/problem solving, and initiative.  However, he was rated as "needs improvement" (a 1 out of 3, with 3 being the highest possible score and 1 being the lowest possible score) in four areas: communications, leadership/managing people, teamwork/cooperation, and judgment.  Halcomb notes that by December 2005, Kirkish had not made any of the improvements targeted in his 2005 mid-year performance evaluation and that he continued to seek instructions outside of his CFT and over the head of his PDC. Additionally, she states that he continued to write his own code rather than implement code that was agreed-upon by his team and by Marketron.

In December 2005, Halcomb, Knight, John Peterson, and Hunter met regarding Kirkish.  In that meeting, Halcomb states that they agreed that Kirkish "had been difficult to deal with..., failed to follow his supervisor's directions, and disrespected his lead developers, PDCs, cross-functional team members and company decisions."  Halcomb states that she, Knight, and Peterson recommended to Hunter that Kirkish be fired.  A Marketron memo

dated January 13, 2006[3] states that the altered memo circulated in September and October 2005 started the discussions of Kirkish's termination, although concerns over his inability to be a team player and to follow directions from his PDC had been discussed before.  The memo also states that Kirkish was not willing to work with or take directions from his team and that he did not respect his PDC's decisions, choosing to do things his own way.  The memo states that Hunter, Peterson, Knight, and Halcomb met on January 9, 2006 to discuss Kirkish's project and began discussing him, concluding that he had been a difficult employee for the previous two years because he did not follow directions and did not respect the decisions made by the company or on his project and did not respect his teammates.  They also concluded that he argued with and did not get along with other employees.

Davis states in his affidavit that he recommended in 2005 to Hunter that Kirkish be terminated, remarking that Kirkish refused to follow directions or do what was asked of him.  Halcomb states in her affidavit that she, Knight, and Peterson recommended to Hunter that Kirkish be terminated, and Hunter states that his decision was based on their input.  Hunter asserts that the reasons Kirkish was fired was because he "failed to follow instructions, disrespected his team members by writing code based upon his own

---

[3]        This memo was apparently written by Halcomb because it states "Michael, John Peterson, Sid, and myself" met to discuss the project Kirkish was working on and the employees working on it, which led to the decision to terminate Kirkish.  Because both Halcomb and Hunter assert that the members of the meeting in which Kirkish's termination was discussed and decided on were Hunter, Peterson, Knight, and Halcomb, it is a permissible conclusion that the "I" referred to in the memo is Halcomb.

opinion and the opinions of other people outside the team, and his failure to follow the company's direction." Halcomb stated in her affidavit and during her deposition that Kirkish was fired because he failed to follow directions, failed to respect company decisions, and failed to respect his team members. On January 10, Marketron terminated Kirkish.

After Kirkish was terminated, Marketron did not immediately hire another employee to replace him. Kirkish's duties were distributed to Marketron's other developers, including Davis (age 38), Rafferty (age 25), Cameron Aycock ("Aycock") (age 28), and Patrice Eligwe ("Eligwe") (age 28). Marketron hired another software developer, Dale Hawkins ("Hawkins") (age 40), in March 2006, approximately three months after Kirkish was terminated. Hawkins had previously been employed by Marketron as a developer and was hired to work on a project on which Kirkish had only briefly worked.

**DISCUSSION**

***Kirkish's ADEA Claim***

Marketron has moved for summary judgment on Kirkish's ADEA claim. Marketron argues that Kirkish has not alleged facts that constitute a *prima facie* case but that even if he has, Marketron terminated him for legitimate, non-discriminatory reasons that have not been demonstrated to be pretexts for discrimination. Although based on the evidence, Kirkish has established a *prima facie* case,

he has not rebutted all of Marketron's non-discriminatory reasons for his termination.   Thus, under the ADEA, no reasonable jury could return a verdict for Kirkish, and Marketron is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(c); *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1358 (11th Cir. 1999).   As a result, Marketron is entitled to summary judgment on this claim.

ADEA claims based on circumstantial evidence of discrimination are evaluated by following the framework laid out by the U.S. Supreme Court in evaluating Title VII race discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).   *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) ("This Court, as well as other federal courts of appeals, uses the framework established in *McDonnell Douglas*... to evaluate ADEA claims that are based upon circumstantial evidence of discrimination.").   Because Kirkish has not proffered any direct evidence that Marketron discriminated against him based on his age, the *McDonnell Douglas* framework will be employed here.   Under *McDonnell Douglas*, to base a claim of age discrimination on circumstantial evidence, a plaintiff must first show that he has established a *prima facie* case of discrimination.   The Eleventh Circuit has stated,

> One method a plaintiff can use to establish a prima facie case for an ADEA violation is by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual.

10

*Id.  See also Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Damon*, 196 F.3d at 1359.  Kirkish clearly meets the first three prongs.  In Marketron's answers to Kirkish's interrogatories, Marketron attests that Kirkish was 53 years old and that he was qualified for his job at the time of his termination. Additionally, Kirkish's termination more than sufficiently demonstrates that he was subjected to an adverse employment action, which Marketron does not dispute.  Marketron does dispute, however, that Kirkish fulfills the fourth prong.

Marektron argues that because Kirkish's duties were distributed among a group of existing Marketron employees rather than being wholly assumed by a replacement, Kirkish has not met the fourth prong.  Courts have held that plaintiffs cannot establish the fourth prong of a *prima facie* case if the plaintiff was terminated and the employer sought no new applicants for that position, resulting in the elimination of the plaintiff's position due to an employer's reduction-in-force or downsizing.  *See, e.g., Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998).  The Eleventh Circuit has altered slightly the requirements for proving an ADEA age discrimination case when the employee has suffered adverse employment action due to a reduction-in-force.  However, there is a difference between a reduction in

force and a simple termination of an employee. *Williams*, 144 F.3d at 1441.

Here, Kirkish was terminated, and his job responsibilities were spread out among the other program developers at Marketron. However, Hawkins was hired approximately three months after Kirkish's termination as a new program developer for Marketron although he did not assume Kirkish's exact duties. In *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1346-47 (11th Cir. 2000), the Eleventh Circuit found that the district court correctly applied the four *prima facie* case elements previously articulated here rather than an altered set of requirements for a reduction-in-force case where the plaintiff was terminated and a younger individual previously employed by the defendant assumed the plaintiff's duties. Like *Munoz*, the instant case involves an allegedly discriminatory termination, and as in *Munoz*, in evaluating the fourth prong of Kirkish's *prima facie* case, this court must determine whether Kirkish "was replaced or otherwise lost his position to a younger individual." *Chapman*, 229 F.3d at 1024. *See also Munoz*, 223 F.3d at 1346-47; *Miller v. Aramark Corp.*, No. 03-1546, 2004 WL 1781103, at *4 (N.D. Ga. July 14, 2004) ("In this case, Aramark Refreshment did not 'replace' the Plaintiff in the sense of hiring a new individual to take his place. Rather, the Plaintiff was replaced in the sense that Aramark Refreshment assigned his duties to two employees, both of whom were

substantially younger than the Plaintiff.  That is sufficient to establish a prima facie case of discrimination.").

The individuals who assumed Kirkish's duties after he was terminated were all under the age of 40.  Additionally, although the program developer hired two months after Kirkish's termination was forty (40) years old and thus within the class of individuals protected by the ADEA, he was nonetheless thirteen (13) years younger than Kirkish.  *See Carter v. City of Miami*, 870 F.2d 578, 582-84 (11th Cir. 1989); *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1550 (11th Cir. 1994)("Age discrimination can occur between two members of a protected clas.").  Because the evidence demonstrates that Kirkish was replaced by younger employees, he fulfills the fourth prong and thus has established a *prima facie* case of discrimination under the ADEA.

Once a plaintiff has established a *prima facie* case and thus created an inference of discrimination on the part of the employer, under the *McDonnell Douglas* framework, to eliminate this presumption, "the defendant need only to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action."  *Kelliher*, 313 F.3d at 1275.  At this stage, the Eleventh Circuit has emphasized that the defendant's burden is extremely light: "it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Chapman*, 229 F.3d at 1024.  Here,

Marketron has cited numerous non-discriminatory reasons for firing Kirkish, including his (1) failure to follow directions, (2) failure to respect the company's decisions, (3) failure to respect his teammates/co-workers, and (4) his co-workers' difficulty in working with him.  Marketron has also produced extensive evidence supporting these reasons.  Thus, Marketron has met its burden of production and has rebutted Kirkish's demonstrated presumption of discrimination.

Once a defendant has proffered legitimate, non-discriminatory reasons for its treatment of the plaintiff, the burden shifts to the plaintiff to demonstrate that the defendant's reasons are simply a pretext for discrimination.  *See Damon*, 196 F.3d at 1361. Here, Marketron has offered up four non-discriminatory reasons for Kirkish's termination.  "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing *Chapman*, 229 F.3d at 1037).  *See also Kelliher*, 313 F.3d at 1275-76.  To rebut an employer's proffered reason as a pretext for age discrimination, the employee must produce evidence that creates a genuine issue of material fact:  evidence showing "*both* that the reason was false, *and* that discrimination was the real reason." *Schweers v. Best Buy, Inc.*, 132 Fed. Appx. 322, 325 (11th Cir.

2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752 (1993))(emphasis in original).

Kirkish's response to Marketron's proffered reasons is, at best, incomplete.  Kirkish claims that Marketron articulated only two reasons for firing him: (1) that he was difficult to work with and (2) that he had poor job performance.   While Kirkish does adduce evidence demonstrating that he was not difficult to work with[4], he does not address Marketron's other non-discriminatory reasons for his termination – that he failed to follow directions, failed to respect the company's decisions, and failed to respect his co-workers.

Kirkish does not rebut Marketron's contention that he was fired because he did not follow directions.  Marketron produced evidence that he did not follow the directions of Davis, the lead developer, regarding how to make his project properly adhere to Marketron's previously written code and product line and that he had lied about it.  Although Kirkish has produced evidence that Eligwe, another program developer who was twenty-eight (28) at the

---

[4]    Kirkish simply proffers testimonial evidence from other Marketron employees stating generally that he was not difficult to work with.  Viewing the evidence in the light most favorable to Kirkish, even if this evidence establishes that this reason for firing Kirkish was false, it does not additionally demonstrate that Marketron's real motivation was discriminatory. Kirkish produces no comparator who was difficult to work with but who was not fired.  The Eleventh Circuit has required that plaintiffs must prove that a defendant's proffered reason was false *and* that the defendant had a discriminatory motivation.  *See id.*  Kirkish has not met that burden here becuase he has produced no direct evidence nor any circumstantial evidence of discrimination.  Even if he had, he has still not rebutted Marketron's other non-discriminatory reasons for his termination.

time Kirkish was fired, failed to follow the directions of two of his superiors and lied about that failure, Eligwe is not a similarly situated comparator.  To identify a similarly situated comparator, "[t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. *We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.*" *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (emphasis added) (internal citations and punctuation omitted).

Eligwe does not meet this standard.  He was hired by Marketron's predecessor company in 1994 and thus had nearly ten years of experience with Marketron when Kirkish was hired in 2003. Additionally, Kirkish has produced no evidence that Eligwe was difficult to work with.  Kirkish also has not shown that Eligwe egregiously disrespected his co-workers by taking credit for work that they all did.  Kirkish has also not produced evidence that Eligwe marched to his own drum by failing to respect the decisions and the direction of the company.  Kirkish, in response to comments on his performance evaluation, rebutted each of his superior's critiques of him and disputed their logic and reasons for rating him at a lower rate, failing to respect the company's direction for his work improvement.  No evidence shows that Eligwe also committed

16

such misconduct.   Although Kirkish has shown that a younger employee also failed to follow directions, Kirkish has not shown that that younger employee was similarly situated and thus has not rebutted Marketron's contention that his failure to follow directions was a non-discriminatory reason for firing him.

Kirkish does not demonstrate that Marketron's contention that his failure to respect the company's decisions was a pretext for discrimination.   Marketron has produced evidence that Kirkish failed to follow the company policies of not going outside his CFT for direction and of following directions from his PDC and failed to adhere to the company policy of completing new projects utilizing previously-constructed code that fit in with its previous product lines.   Although Kirkish disputes the truth of this evidence and argues that other employees went outside their CFT and PDC for directions, Kirkish does not identify a similarly situated comparator.   He does not show that another employee committed all of the same infractions that he committed, including going outside his CFT and PDC, and was not fired.   Thus, Kirkish has not met the strict requirements of creating an issue of fact regarding whether Marketron's stated reason of his not respecting company decisions was merely a pretext for discrimination.

Finally, Kirkish does not rebut Marketron's contention that his disrespect for his team members/co-workers was a legitimate, non-discriminatory reason for his termination.   It has already been

17

discussed that Kirkish ignored his team members' determination that his project utilize previously-created code so as to fit into Marketron's existing product scheme and instead wrote his own, new code for the project.  Additionally, Kirkish created a fake memo giving credit for a large Marketron project to only himself and Davis.  It is clear that Marketron could have reasonably inferred that Kirkish did not respect the contribution and work of his other teammates on the project.  His superiors were legitimately concerned about the effect this fake memo had on his co-workers. Kirkish has not disputed that he wrote this memo to demonstrate that he and Davis deserved the credit for the project.  Thus, he has not rebutted Marketron's reason for firing him and has not demonstrated that it was pretextual.

Kirkish argues that Marketron proffered as a nondiscriminatory reason for his termination the allegation that Kirkish performed poorly on the job.  Marketron does not make such a contention in its motion for summary judgment nor in its reply brief.  Although Marketron does cite to Kirkish's poor performance reviews, most of these poor reviews support their *other* reasons for terminating Kirkish – namely that he was difficult to work with, that he failed to follow instructions, and that he failed to respect his co-workers.  Marketron's citation to Kirkish's poor performance evaluation also implicates Kirkish's failure to respect company decisions and to follow directions because, rather than complying

with his superiors' recommendations on that evaluation, as previously stated, Kirkish refuted and questioned each of his evaluators' comments and suggestions.

The court does not doubt that Kirkish is a skilled program developer and that he was more than proficient in the technical aspect of his employment at Marketron. However, Marketron argues that it fired Kirkish for legitimate reasons other than his technical performance - that is, because he failed to follow directions and was disrespectful. Kirkish's arguments are clearly based on his disagreement with what he views as a poor business decision by Marketron - to fire someone who was technically skilled at his position. However, it well established that it is not within the province of this court to judge Marketron's business decisions. This court is charged with determining whether Marketron discriminated against Kirkish because he was over forty (40). *See, e.g., Damon*, 196 F.3d at 1361; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."). Kirkish's belief in his good performance is insufficient to establish that Marketron's reasons

for firing him are pretextual.  *See Holifield v. Reno*, 115 F.3d 1555, 1565-66 (11th Cir. 1997).

Kirkish has not met his burden of meeting each of Marketron's four proffered reasons head-on, refuting them, and demonstrating that they are merely pretexts for actual discriminatory animus. Kirkish has not even addressed most of Marketron's proffered reasons and has spent most of his time addressing a different reason that he believes Marketron relied upon.  His opposition to Marketron's motion on this claim fails because

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman*, 229 F.3d at 1030.  Because Marketron has articulated legitimate, non-discriminatory reasons for firing Kirkish and because Kirkish has not produced evidence disputing these reasons and demonstrating that they are a pretext for Marketron's discriminatory motives, Marketron is entitled to a judgment as a matter of law on Kirkish's ADEA claim.

### Kirkish's § 1981 Race Discrimination Claim

Marketron has moved for summary judgment on Kirkish's race discrimination claim under 42 U.S.C. § 1981, arguing that Kirkish has not shown that a similarly situated non-Caucasian employee was treated more favorably and that even if Kirkish could establish a

prima facie case in this manner, he was terminated for legitimate, non-discriminatory reasons. Like Kirkish's ADEA claim, the race discrimination claim may be proven by direct or circumstantial evidence. *Cooper v. Southern Co.*, 390 F.3d 695, 724 (11th Cir. 2004). Because Kirkish has produced no direct evidence of race discrimination (indeed, in his deposition, he indicated that race discrimination was only "possibly" a motivation for his termination), the *McDonnell Douglas* framework is again appropriate for evaluating this claim based on circumstantial evidence. *Id.*

To establish a *prima facie* case based on racial discrimination, a plaintiff must show (1) that he belonged to a racial minority[5], (2) that he was subjected to an adverse employment action, (3) that he was qualified to do the job, and (4) that the employer treated similarly situated employees outside the plaintiff's classification more favorably. *See Knight v. Baptist Hosp. of Miami*, 330 F.3d 1313, 1316 (11th Cir. 2003). Kirkish clearly meets the first three requirements. He is a member of a racial group. *See* Note 5 *supra*. His termination obviously qualifies as an adverse employment action. And as previously stated, Marketron has conceded in its discovery responses that Kirkish was qualified for the position that he held.

---

[5]     Kirkish meets this requirement despite the fact that he is Caucasian. The U.S. Supreme Court has held that a Caucasian employee may bring a § 1981 racial discrimination suit even though the employee does not belong to a racial minority. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287, 96 S.Ct. 2574, 2582 (1976) ("§ 1981 is applicable to racial discrimination in private employment against white persons").

Kirkish is unable to meet the fourth requirement for establishing a *prima facie* case of race discrimination.  In his minimalist response to the defendant's motion for summary judgment, Kirkish apparently designates Patrice Eligwe, an African-American, as his comparator, arguing that "Eligwe actually did do the things Kirkish is accused of, yet not fired."  However, Eligwe does not meet the strict requirements for serving as a similarly situated comparator to demonstrate that Marketron engaged in racial discrimination against Kirkish.  As previously discussed, to establish another employee as a comparator for the purposes of establishing an employer's discriminatory treatment, the comparator "must be similarly situated in all relevant respects.  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace*, 376 F.3d 1079, 1091 (11th Cir. 2004).  As has already been established on the ADEA claim, Eligwe is not similarly situated to Kirkish and cannot serve as a comparator for the purposes of establishing a prima facie case.  "*If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*"  *Holifield*, 115 F.3d at 1562 (emphasis in original).  Because Kirkish has not brought forth any conclusive evidence demonstrating that Marketron discriminated against him on the basis of race and because Kirkish cannot establish a *prima*

*facie* case of race discrimination, Marketron's motion for summary judgment on this claim is due to be granted.

**Marketron's Motions to Strike Portions of Affidavit Testimony**

By separate motions, Marketron has moved to strike portions of Kirkish's and Cagle's affidavit testimony.  Marketron argues that both affidavits contain statements that are inadmissible hearsay. Marketron also argues that the court should strike those portions of Cagle's statement that reference documents that have not been submitted.  Finally, Marketron argues that the court should strike those portions of Kirkish's affidavit that are conclusory, speculative, and based on his opinion.

Insofar as Marketron's motions request that the court strike those portions the affidavits that are inadmissible hearsay and that rely on documents not presented to the court in evidence, the motions are due to be granted.  The court did not rely on the other portions of Kirkish's affidavit that Marketron objects to because those portions were irrelevant to and had no probative value regarding the issues before the court.  Thus, Marketron's motion to strike portions of Kirkish's affidavit on grounds other than hearsay is due to be mooted.

CONCLUSION

For the foregoing reasons and by separate order, Marketron's motion for summary judgement will be granted on both counts. Additionally, Marketron's motion to strike portions of Cagle's

declaration will be granted.  Marketron's motion to strike portions of Kirkish's affidavit will be granted in part and mooted in part.

**DONE** this 15th day of February, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE